## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| **Johnny Carter, III,** | **Court File No.** |
|     **Plaintiff,** | |
| vs. | **COMPLAINT WITH JURY DEMAND** |
| **Centurion of Minnesota, LLC; Centurion Detention Health Services, LLC; Nathan Milender, FNP-C, in his individual and official capacities; and Stephen Dannewitz, MD, in his individual and official capacities,** | |
|     **Defendants.** | |

## INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and §§ 1988, and under the common law of the State of Minnesota.

2. It is alleged that Defendants violated Plaintiff's constitutional rights under the Eighth Amendment to the United States Constitution and engaged in medical malpractice under Minnesota state law.

## JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

1

## VENUE

4. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

## PARTIES

5. Plaintiff Johnny Carter ("Mr. Carter") was at all material times a resident of the State of Minnesota, was an inmate being detained at Minnesota Correctional Facility-Lino Lakes, and of full age.

6. Defendants Centurion of Minnesota, LLC, and Centurion Detention Health Services, LLC, ("Centurion") are incorporated business entities that, at all times relevant to this complaint, were under contract with the Minnesota Department of Corrections (DOC) to provide healthcare for inmates held in Minnesota state-operated correctional facilities.

7. Defendant Nathan Milender, FNP-C ("FNP Milender") was, at all times relevant to this complaint, employed as a Family Nurse Practitioner-Certified by Centurion to provide medical care to inmates at Minnesota Correctional Facility-Lino Lakes.

8. Defendant Stephen Dannewitz, MD ("Dr. Dannewitz") was, at all times relevant to this complaint, employed as a Physician by Centurion and, upon information and belief, as Medical Director by Centurion to oversee medical care to inmates at Minnesota Correctional Facility-Lino Lakes.

## FACTS

9. In June 2017, Plaintiff Mr. Carter was transferred into the custody of Minnesota Correctional Facility-Lino Lakes. As part of the inmate intake process, Mr. Carter was given a physical

examination on June 23, 2017 by Defendant FNP Milender. As part of his assessment of Mr. Carter, FNP Milender noted that Mr. Carter had been a half-pack per day smoker for 22 years and had a history of alcohol abuse with past treatment. FNP Milender noted a growth in Mr. Carter's pharynx (throat) near the left uvula that was ulcerated and multicolored, but no enlargement or tenderness of Mr. Carter's lymph nodes. FNP Milender knew that the growth in Mr. Carter's pharynx was most likely cancerous. FNP Milender noted that he would submit a request for a referral to an otolaryngologist and possible biopsy of the lesion and would follow up in three weeks. There is no record of any request by FNP Milender for otolaryngology referral or possible biopsy in Mr. Carter's medical record. FNP Milender failed to take any action in response to observing a suspected cancerous tumor in Mr. Carter's throat.

10. On July 20, 2017, Defendant FNP Milender again saw Mr. Carter. FNP Milender noted that the lesion remained and was red and ulcerated though he believed it was somewhat smaller. FNP Milender attempted to take a picture of the lesion with a standard camera but was unsuccessful. FNP Milender noted that he would recheck the lesion in one month. FNP Milender once again failed to take any action in response to observing a suspected cancerous tumor in Mr. Carter's throat.

11. On August 18, 2017, Defendant Dr. Dannewitz saw Mr. Carter for follow up of the throat lesion. He noted that the lesion was necrotic, had not gone away and that it had a reddish and black appearance. Dr. Dannewitz also noted "bilateral firm submandibular lymphadenopathy" (lymph gland disease below the jaw on both sides) and noted that Mr. Carter's lesion was suspicious for cancer. Dr. Dannewitz ordered a referral to an otolaryngology consultation and possible biopsy.

12. Mr. Carter was finally seen on September 8, 2017 by Seth Janus, MD, an otolaryngologist with Health Partners. By this time, Mr. Carter's throat lesion had grown to 2 centimeters and was hard. Dr. Janus also found a 2 centimeter nodule in a lymph node in the left side of Mr. Carter's neck. Dr. Janus biopsied the throat lesion and ordered a CT scan of Mr. Carter's neck. These tests revealed that Mr. Carter's throat lesion was an invasive poorly differentiated squamous cell carcinoma tumor along with bilateral lymph node metastasis, stage IV.

13. Mr. Carter underwent many sessions of chemotherapy and radiation and endured many procedures including placement of a feeding tube into his stomach and IV therapy for nutrition and hydration issues from October 2017 through April 2018. He experienced significant and ongoing pain, difficulty swallowing and other effects from his condition and from the procedures and treatments he underwent.

14. A follow up PET scan by Dr. Janus on June 7, 2018 indicated that Mr. Carter's cancer had spread to his bilateral cervical lymph nodes. Mr. Carter was sent to Dr. Derek Schmidt for bilateral modified radical neck dissection surgery for recurrent cancer. This surgery was performed on June 22, 2018. After the surgery, Mr. Carter was told that chemotherapy and radiation would not likely be effective for his advanced stage of cancer.

15. Starting in July 2018, Mr. Carter developed serious swelling in his neck and jaw areas. He was sent to the emergency room by corrections staff and had a number of follow up visits. This swelling was diagnosed as lymphedema resulting from the neck dissection surgery. This lymphedema caused pain and interfered with Mr. Carter's ability to swallow. On August 1, 2018, Dr. Schmidt recommended lymphedema therapy. Instead of providing Mr. Carter with lymphedema therapy, however, Mr. Carter was seen by a physical therapist in the

prison. None of the treatment modalities available to the physical therapist were designed to address lymphedema.

16. On August 7 and August 14, 2018, Dr. Stephen Craane, a physician with Centurion, saw Mr. Carter for follow up visits and noted extensive lymphedema. Dr. Craane noted that physical therapy modalities were not helpful in addressing the lymphedema and submitted a request for lymphedema clinic consultation on August 14, 2018.

17. Dr. Craane followed up on his request for lymphedema clinic consultation for Mr. Carter on August 21, 2018.

18. Dr. Craane's requests for a lymphedema clinic consultation for Mr. Carter were denied on August 27, 2018 with a note that Mr. Carter would be leaving the prison on September 24, 2018 and that discharge planners should work with him to line up his own lymphedema treatment. This was referred to as an alternate treatment recommendation. The note was signed by Defendant Dr. Dannewitz.

19. On August 27, 2018 Dr. Craane saw Mr. Carter and noted prominent rigid lymphedema causing considerable discomfort and difficulty swallowing. Dr. Craane noted that he "may need to discuss the ATP [alternative treatment plan] with the regional medical director, given the worsening state of patient's lymphedema."

20. On September 5, 2018 Dr. Craane saw Mr. Carter and noted increased pain and decreased mobility due to prominent neck lymphedema that had become "wooden" in texture. He again requested a lymphedema clinic referral. He noted that massage and other physical therapy modalities had failed. This referral was denied by Defendant Dr. Dannewitz on September 14, 2018 because Mr. Carter was expected to be released from prison in 11 days.

21. Defendant Dr. Dannewitz saw Mr. Carter on September 10, 2018 for cheek and ear pain, with parotid swelling, an indication that his cancer was spreading. Nonetheless, Defendant Dr. Dannewitz noted that since Mr. Carter would be leaving the prison on September 24, 2018 and would see his oncologist the next day "I do not feel this two-week delay is significant."

22. On September 25, 2018, after leaving prison, Mr. Carter saw his oncologist, Dr. Kurt Demel. A PET scan revealed that Mr. Carter's cancer had returned and spread into multiple lymph nodes. His cancer cannot be cured but is being managed with palliative therapy. His persistent lymphedema has significantly cleared after lymphedema therapy.

**Risk Factors and Longevity**

23. According to oncologists, rates of squamous cell carcinoma of the head and neck, especially the oropharynx, have been increasing at an alarming rate in recent years. "Overall, there was a 57.3% increase in incidence of oropharyngeal between 1975 and 2014." (Oral Oncology. 2017 Nov; 74:90-97. doi: 10.1016/j.oraloncology.2017.09.015. Epub 2017 Oct 2.) Important risk factors include a history of smoking and alcohol abuse. These risk factors were known to Defendant FNP Milender.

24. At the time Plaintiff Mr. Carter was examined by Defendant FNP Milender on June 23, 2017, his throat lesion was localized. There was no evidence of lymph node involvement. However, by the time he was seen by an oncologist on September 8, 2017, his throat lesion was 2 centimeters in size and one lymph node on the left side of his neck was palpably enlarged. Testing showed that lymph nodes on both sides of his neck were involved. Specifically, Mr. Carter was diagnosed with left palatine tonsil squamous cell carcinoma

(p16 neg), invasive/poorly differentiated, stage IV A (T1, N2c M0) with bilateral cervical node metastasis (p16 neg).

25. An independent oncologist reviewed Mr. Carter's medical records, including his likely stage of cancer when the lesion was first discovered on June 23, 2017 as compared with the stage IV A cancer that was diagnosed on September 8, 2017.

26. For a 45 year old Black man with a 2.0 centimeter oropharyngeal cancerous lesion, life expectancy data is as follows:

| 2.0 cm lesion, stage 0 | 2.0 cm lesion, stage IV A | No Cancer |
|---|---|---|
| 15.9% 10-year cancer mortality rate (Kaplan-Meier death rate of 25.3%) | 39.5% 10-year cancer mortality rate (Kaplan-Meier death rate of 56.9%) | |
| 23.1 years mean survival | 17 years mean survival | 32.8 years mean survival |

27. As a result of Defendant FNP Milender's failure to refer Mr. Carter timely for evaluation of his throat lesion, Mr. Carter's chance of survival from his cancer and his life expectancy have been significantly diminished. Further, Mr. Carter has endured surgeries, chemotherapy, radiation therapy and other painful and taxing procedures that would not have been necessary had his condition been diagnosed and treated sooner.

28. As a result of Defendant Dr. Dannewitz's refusals to refer Mr. Carter for lymphedema therapy, Mr. Carter was made to suffer with pain, lack of neck mobility, and difficulties swallowing. These difficulties led to nutritional deficits that further impaired Mr. Carter's ability to recover from his cancer.

29. As a result of Defendant Dr. Dannewitz's failure to seek further evaluation and treatment for Mr. Carter when his symptoms recurred, Mr. Carter's cancer had the opportunity to spread into multiple lymph nodes and become incurable.

30. As a result of Defendants' failure to timely and properly address Mr. Carter's initial condition, resulting lymphedema, and recurring symptoms, Mr. Carter has suffered permanent disfigurement and disability, severe and unnecessary pain, emotional trauma and distress, additional medical treatment, lost wages, diminished earning capacity, medical expenses, and significantly diminished life expectancy and chance of survival.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – EIGHTH AMENDMENT VIOLATIONS AGAINST DEFENDANTS FNP MILENDER AND DR. DANNEWITZ

31. Paragraphs 1 through 30 are incorporated herein by reference as though fully set forth.

32. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiff's constitutional rights under the Eighth Amendment to the United States Constitution through their deliberate indifference towards Plaintiff's serious medical needs and through their deliberate indifference towards a serious risk of harm to Plaintiff's health and safety.

33. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

### COUNT 2: MEDICAL MALPRACTICE AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

34. Paragraphs 1 through 29 are incorporated herein by reference as though fully set forth.

35. Based on the above factual allegations, the individual Defendants have committed medical malpractice against Plaintiff. Specifically, Defendants breached a recognized duty and standard of care when they failed to timely refer Mr. Carter for evaluation of his throat lesion, refused to refer Mr. Carter for lymphedema therapy, and failed to seek further treatment for Mr. Carter when his symptoms returned.

36. As a direct and proximate result of Defendants' malpractice, Plaintiff suffered injuries and damages as aforesaid.

37. Defendants Centurion of Minnesota, LLC, and Centurion Detention Health Services, LLC, are vicariously liable for the malpractice of the individual Defendants.

### RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Plaintiff's constitutional rights under the Eighth Amendment to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations;

b. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

c. Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

d. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;

e. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: January 4, 2021

By: s/ Zorislav R. Leyderman
ZORISLAV R. LEYDERMAN
Attorney License No. 0391286
Attorney for Plaintiff
The Law Office of Zorislav R. Leyderman
222 South 9th Street, Suite 1600
Minneapolis, MN 55402
Tel: (612) 876-6626
Email: zrl@ZRLlaw.com